IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

OAK ACRES NURSERY, LLC,

                      Plaintiff,                    Case No. 3:11 CV 609

      -vs-

                                                    <u>MEMORANDUM OPINION</u>

STINCHCOMB NURSERY SALES, INC.,

                      Defendant.

KATZ, J.

       Plaintiff Oak Acres Nursery, LLC brought this suit against defendants Stinchcomb Nursery

Sales, Inc., Mr. K. David Stinchcomb, and Stinchcomb Associates, Inc., seeking approximately

$210,000 in unpaid invoices and interest. The three defendants have filed a joint summary

judgment motion. In that motion, Stinchcomb Nursery is quick to accept responsibility for the

invoices, claiming that Oak Acres was its supplier of nursery products and that a number of

business-related factors combined to lead it to insolvency and to cease operations. Stinchcomb

Nursery asks only that the Court eliminate Oak Acres' alternative non-contract theories since it

has accepted responsibility for breach of the agreement to pay. Stinchcomb Associates and Mr.

Stinchcomb, on the other hand, ask the Court for judgment on all claims, saying that the unpaid

debts are strictly the responsibility of Stinchcomb Nursery and are not collectible from

Stinchcomb Associates, which shares ownership with Stinchcomb Nursery or from Mr.

Stinchcomb, who owns both companies. Oak Acres opposes the motion and requests that the

Court pierce the corporate veil to hold Mr. Stinchcomb liable and recognize Stinchcomb

Associates as Stinchcomb Nursery's successor to hold it liable. Oak Acres has also filed three

motions to strike evidence.

I. JURISDICTION

The Court reviewed its own subject matter jurisdiction, *sua sponte*, and found that the allegations of diversity of citizenship were lacking because the plaintiff is a limited liability company and did not declare the citizenship of each of its members. (Doc. 71.) Rather than dismissing the matter, the Court allowed the plaintiff to file supplemental information establishing the citizenship of Oak Acres. (*Id.*) Oak Acres filed a brief and affidavit indicating that its members are two individuals, both citizens of Oregon. (Doc. 72.) The amended complaint lists Ohio as each defendant's state of residence and indicates that this is an action between citizens of different states with more than $75,000 in controversy. (Doc. 20 at ¶ 7.) The Court has diversity jurisdiction since, at the time of the filing of the complaint, complete diversity existed between the plaintiff and the defendants, and the amount in controversy exceeded the threshold. 28 U.S.C. § 1332.

II. EVIDENTIARY OBJECTIONS

As a threshold matter, Oak Acres has filed three motions asking the Court to strike evidence provided by the defendants in support of their summary judgment motion. The first sounds in relevance, the second in hearsay and lack of personal knowledge, and the third in proper authentication of documents. Oak Acres titled the three motions as motions to strike, but cited Rule 56(c)(2) and filed them coincidentally with summary judgment filings. The Court will treat them as objections relating to the summary judgment motion and arising under Rule 56 as opposed to motions to strike arising under Rule 12(f). Nevertheless, none of these motions finds support in the Federal Rules of Civil Procedure or affects the outcome of the pending summary judgment motion.

2

In the first motion, Oak Acres says that the defendants' evidence of – and attack on – Oak Acres' corporate structure and Oak Acres' adherence to corporate formalities is irrelevant to the Court's analysis of whether the defendant companies followed proper corporate formalities (and thus whether Stinchcomb Nursery's corporate veil should be pierced). On this, Oak Acres is correct; the Court uses criteria supplied by the Ohio Supreme Court and the facts about the defendants' conduct to analyze such a question. The plaintiff's own corporate formalities do not contribute to that analysis and the defendants' assertion of the unclean hands doctrine is misplaced here. Nevertheless, the Court need not take the disfavored step, *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953), of striking this – or striking any irrelevant evidence or assertions – because the Court only uses relevant arguments and evidence in analyzing motions. Thus, the Court denies the first motion to strike.

In the second motion, Oak Acres objects to seventeen statements found in four affidavits submitted with the summary judgment motion. Oak Acres says they contain one instance of hearsay and, due primarily to the affiant's use of, "it is my belief," or "to the best of my knowledge and belief," sixteen instances where statements lack personal knowledge. These objections are unsuccessful for three reasons. First, while Oak Acres cites to cases where similar language indicated the affiant actually lacked personal knowledge, its reading of those is too broad. When an affiant couches his statements in "my belief" qualifiers, that may be an indication that he is speaking beyond his personal knowledge, but that does not mean the language is forbidden in affidavits. The rule remains as it always has: affidavits in support of or in opposition to summary judgment motions must be based on personal knowledge, Federal Rule of Civil Procedure 56(c)(4), and Courts can judge whether that requirement is met affidavit by affidavit

3

without having to ban certain language from affidavits. Second, the defendants filed three new

affidavits (Doc. 68) which eliminate some, but not all, of the concerns raised by Oak Acres. Third,

while "[a] party may object that the material cited to support or dispute a fact cannot be presented

in a form that would be admissible in evidence," Federal Rule of Civil Procedure 56(c)(2), for the

Court to act on such an objection, the defendants must have cited that evidence in support or

dispute of a fact they are proposing. The summary judgment motion does not cite to six of the

questioned paragraphs at all and it uses several others to support a fact to which the objection does

not apply. The Court cannot find a single instance where the motion relies on a certain fact and

Oak Acres objects to the admission of the only evidence supporting that fact. This moots the

objection. Further, the objections are also moot because they are outside the regular summary

judgment process. Since courts do not weigh the evidence in a summary judgment analysis, *Wiley

v. United States*, 20 F.3d 222, 227 (6th Cir. 1994), to avoid summary judgment, a plaintiff need

not eliminate any evidence a defendant has to support his position, but instead only needs to point

to evidence suggesting a material fact is in dispute. Because eliminating the objected-to sentences

would not change the strength of the defendants' current motion, and because an objection to

evidence would only apply to this motion, the motion to strike is moot. The Court denies the

motion.

   In the third motion to strike, Oak Acres says that the Court should strike nine pages of

invoices attached to the defendants' reply because they are irrelevant, are unauthenticated, and the

defendants did not produce them in response to a proper discovery request. To their response, the

defendants attached an affidavit sufficiently establishing authentication of the invoices (Doc. 68-

1), so the Court need not analyze this ground. As discussed above, the Court will disregard

irrelevant evidence in considering the summary judgment motion and does not need to weigh the evidence against Oak Acres' contrary evidence (that is, it only needs to ascertain whether Oak Acres can point to some evidence on each point to survive summary judgment). These reasons render the objection moot, but Oak Acres also asks that the Court strike the exhibit because the defendants failed to produce them even after repeated requests and Oak Acres' filing of a motion to compel. This is an allegation of a serious breach of document production protocol. However, since the document will not further the summary judgment analysis and since the motion to strike is not, *per se*, a motion for discovery sanctions, the Court will decline to strike the document as a sanction but will allow Oak Acres to move for an appropriate discovery sanction related to this event in the future.

The Court denies the three motions expressing objections to evidence submitted by the defendants in support of their summary judgment motion.

### III. Summary Judgment Standard

Summary judgment is appropriate where, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of, "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotations omitted). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party can avoid judgment only by

5

setting forth facts that show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(a) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter," *Wiley v. United States*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine, "whether the evidence presents a sufficient disagreement to require

6

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."
*Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

## IV. CHOICE OF LAW

"When the success of a state law claim brought in federal court under diversity jurisdiction is dependent on piercing the corporate veil, this question of substantive law is governed by the law of the state in which the federal court sits." *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 723 (6th Cir. 2007). Some of Oak Acres' claims rely on piercing the corporate veil, so those questions are decided using Ohio law.

Regarding all other claims based in state law, in diversity actions, a federal court uses its forum state's conflict of law rules to determine which state's substantive law to apply. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The parties had an ongoing relationship, but did not have a written agreement that specified a choice of law. In such cases, Ohio utilizes Section 188 of the Conflict of Law Restatement, (*Gries Sports Enters., Inc. v. Modell*, 473 N.E.2d 807, 810 (Ohio 1984); *see* Restatement (Second) of Conflict of Laws § 188)), which instructs courts to consider the place of contracting, the place of negotiation, the place of performance, the location of the subject matter of the contract, and the location of the parties. Oak Acres is located in Oregon and the defendants are located in Ohio. The record does not contain a clear indication of where the parties negotiated or created the contract, and hints that they conducted these initial interactions by phone or email from their respective states. (The Court notes that Mr. Stinchcomb visited the Oak Acres facility in Oregon early on in the relationship, but also notes that, at the time of that visit, Oak Acres had already shipped the first orders, so this visit cannot represent the negotiation or formation of the contract for these purposes. (Job Dep., Doc. 42-6 at 17-18 & 99.))

7

Oak Acres shipped the product from Oregon to Ohio, from where the defendants resold it and shipped it out. Because Ohio was where the defendants performed the agreement and their business by bringing the plants to the Ohio location and then selling them from there, Ohio has a stronger correlation with the dispute at hand and the Court will apply Ohio law. Furthermore, neither party has raised a question of choice of law, both parties cite to Ohio law, and the Court cannot find any indication that using another state's law would alter the substantive outcome of this matter.

V. ANALYSIS

A. SUCCESSOR LIABILITY OF STINCHCOMB ASSOCIATES

Oak Acres seeks to hold Stinchcomb Associates liable for the unpaid debts and says both that Stinchcomb Associates was its actual customer and that Stinchcomb Associates is the successor to Stinchcomb Nursery and should be liable for its debts. While it has not shown sufficient evidence suggesting Stinchcomb Associates was the actual customer, Oak Acres can move forward on the successor liability theory. Generally, one company is not liable for the debts of another, even following a purchase of assets or some other continuation of the prior enterprise. *Welco Indus., Inc. v. Applied Cos.*, 617 N.E.2d 1129, 1132 (Ohio 1993). However, Ohio recognizes four instances in which a successor may be liable: "when (1) the buyer expressly or impliedly agrees to assume such liability; (2) the transaction amounts to a de facto consolidation or merger; (3) the buyer corporation is merely a continuation of the seller corporation; or (4) the transaction is entered into fraudulently for the purpose of escaping liability." *Id.* (citing *Flaugher v. Cone Automatic Machine Co.*, 507 N.E.2d 331, 334 (Ohio 1987). Oak Acres does not argue that the transaction was a consolidation or merger of Stinchcomb Associates and Stinchcomb Nursery

8

(as expressed in the second *Welco* exception), but provides some argument as to the first, third, and fourth exceptions.

Oak Acres says that Stinchcomb Associates expressly agreed to assume Stinchcomb Nursery's liability when, in December 2009, Mr. Stinchcomb sent a letter on Stinchcomb Associates letterhead to certain creditors of Stinchcomb Nursery that acknowledged cash flow problems but also said changes had been made and he would work to get them paid. (Doc. 50-5.) The Court need not analyze whether the wording of this letter amounts to Stinchcomb Associates' express assumption of past liability (that is, a novation) because Stinchcomb Associates did not address the letter to Oak Acres or send it to Oak Acres. "[F]or a 'novation' to be effective, all the parties must agree to the substitution of the new debtor for the old one, and, therefore, to the new or changed terms pursuant to which the substitution is made. Intent, knowledge and consent are the essential elements in determining whether a purported novation has been accepted." *Bolling v. Clevepak Corp.*, 484 N.E.2d 1367, 1379 (Ohio Ct. App. 1984); *see also* 18 Ohio Jur. 3d Contracts § 255 ("In the case of a novation by substitution of either a new creditor or a new debtor, the assent of all the parties is essential."). Stinchcomb Associates sent the letter to some creditors but not to Oak Acres so it cannot act as a novation or assumption of debt because it lacks intent, knowledge, and consent on both sides. (Jimmie Roofener Dep., Doc. 43-1 at 52-53 (the owner and president of Oak Acres acknowledging that he did not receive the letter); Job Dep., Doc. 42-6 at 56-59 (the general manager of Oak Acres acknowledging that he never saw the letter until it was produced in discovery and that, if anyone at Oak Acres received such a letter, he should have been informed of it).)

Oak Acres also claims that Stinchcomb Associates impliedly assumed Stinchcomb Nursery's debts by paying on its liabilities. *See, e.g.*, *Mohammadpour v. Thomas*, No. 85474, 2005 WL 1793515, ¶ 8 (Ohio Ct. App. July 28, 2005) (allowing that a new company's payment of a co-owned, but defunct, company's debt is evidence of implied assumption). Oak Acres points to evidence of Stinchcomb Associates paying Stinchcomb Nursery's debts (Rosengarten Dep. May 2, 2012, Doc. 58-4 at 191) but does not point to any indication of Stinchcomb Associates paying the debt to Oak Acres. This is key. A successor corporation may choose those debts it will agree to assume and those it will not and the mere act of assuming some debts does not act as an automatic assumption of all related debts. *See, e.g.*, *Flaugher*, 507 N.E.2d at 334-35 (analyzing each contract section to determine which debts the successor assumed and which it did not). Evidence of Stinchcomb Associates paying Stinchcomb Nursery's debts, but not the debt to Oak Acres, does not tend to show that Stinchcomb Associates impliedly assumed the liability to Oak Acres.

Oak Acres makes no argument that the transaction amounts to a merger or consolidation (the second *Welco* exception). Further, while Oak Acres points to numerous indications that Stinchcomb Associates and Stinchcomb Nursery might have shared customers and lines of business, it points to no evidence of Stinchcomb Associates taking Stinchcomb Nursery's business role *after* the collapse and liquidation of Stinchcomb Nursery. Thus, the record does not show that Stinchcomb Associates is a continuation of Stinchcomb Nursery (the third *Welco* exception).

The fourth *Welco* exception is available where the plaintiff can show that the defendant entered into a transaction fraudulently or to escape liability. *Welco*, 617 N.E.2d at 1132. On this exception, Oak Acres does not rest its argument on Stinchcomb Associates being the ongoing successor to Stinchcomb Nursery, but rather that Stinchcomb Associates succeeded Stinchcomb

10

Nursery by profiting from certain transaction as Stinchcomb Nursery was approaching or was in insolvency. Oak Acres can show that, while it was supplying Stinchcomb Nursery with nursery product to be resold to Kmart, Stinchcomb Associates was the entity that was selling to Kmart and receiving the proceeds. (Doc. 50-10 (affidavit of Steve Hamilton, Sears' designated representative) ("Throughout the entire business relationship, Sears [as the parent company of Kmart] conducted business with Stinchcomb Associates, Inc. . . . only. There are no agreements or sales records, which evidence a business relationship between Sears and Stinchcomb Nursery Sales, Inc."); Doc. 53-2 (sales agreement between Sears / Kmart and Stinchcomb Associates).) Stinchcomb Associates deposited $2,061,175.30 of Stinchcomb Nursery's sales receipts into its account rather than Stinchcomb Nursery's. (Related Party Payable/Receivables, Doc. 51-4; Rosengarten Dep., Doc. 58-4 at 187.) Stinchcomb Nursery loaned Mr. Stinchcomb $1,092,950.73 between its founding and 2009 (although Mr. Stinchcomb paid back $258,689.81 in 2010). (Doc. 51-4; 58-4 at 187 & 193-94.) Stinchcomb Nursery paid Stinchcomb Associates a "management fee" of $500,000, but only in 2008. (Doc. 51-4; 58-4 at 188.) Stinchcomb Nursery also paid the co-owned Stinchcomb Realty $342,000 in "annual rent," but only in 2009; it paid no rent in years before and after. (Doc. 51-4.)

None of these instances is itself proof of fraud or that someone created a transaction to escape liability. *See Welco*, 617 N.E.2d at 1132. However, taken together, Oak Acres may be able to show that Stinchcomb Associates succeeded Stinchcomb Nursery because it took the assets of Stinchcomb Nursery (in particular by depositing its sales receipts); took money out of the entity in the form of loans to Mr. Stinchcomb, a one-time management fee for services that appear to be ongoing, and a one-time rent charge for the use of property that appears to be ongoing; and

11

orphaned the debts in Stinchcomb Nursery, which was then unable to pay them. Ohio courts have found similar conduct sufficient to find some evidence of fraud and allow a veil-piercing case to proceed. For example, one court noted that transferring $252,000 in consulting fees with little documentation to a defunct company's parent company while not paying creditors, "raises an inference of bad faith and fraud." *Clinical Components, Inc. v. Leffler Indus., Inc.*, No. 95CA0085, 1997 WL 28246, *4 (Ohio Ct. App. Jan. 22, 1997) (citing R.C. 1336.04(A)(1) (Intent to Defraud)). Stinchcomb Associates offers explanations as to each transaction and claims it can show that Oak Acres relies on a few mistakes (such as creating the sales relationship with Kmart in the name of Stinchcomb Associates instead of Stinchcomb Nursery) rather than substantive indications that it created a transaction to escape liability. Oak Acres' evidence, however, is more than just a single instance of an improperly completed form and further analysis would inappropriately require the Court to weigh evidence at the summary judgment stage. The cited evidence is sufficient to prevent Stinchcomb Associates' dismissal.

### B. PIERCING THE CORPORATE VEIL TO HOLD K. DAVID STINCHCOMB LIABLE

Oak Acres seeks to hold Stinchcomb Nursery's sole owner, Mr. Stinchcomb, liable for Stinchcomb Nursery's debts, asserting both that he was the actual customer and, alternatively, if Stinchcomb Nursery was the customer, the Court should pierce the corporate veil. Oak Acres' theory that Mr. Stinchcomb was the customer turns on the original credit application, which Mr. Stinchcomb filled out in the name of Stinchcomb Nursery and signed himself. (Doc. 1-1.) Oak Acres' theory is not supported by the text of the credit application or the testimony of Chris Job, general manager of Oak Acres and the person who accepted the application, because Mr. Job acknowledges that if credit was being extended to Mr. Stinchcomb personally, the application

12

would be filled out entirely differently. (Job Dep., Doc. 42-6 at 73.) Oak Acres has not pointed to any evidence that would suggest the original relationship was struck between Oak Acres and someone other than Stinchcomb Nursery. Further, aside from pointing to reassuring comments – regarding ability to pay – made by Mr. Stinchcomb as the owner of Stinchcomb Nursery, Oak Acres has not pointed to an actual novation or intentional act of adding Mr. Stinchcomb as the customer. While Oak Acres cannot move forward contending that Mr. Stinchcomb was its actual customer, its theory to pierce the corporate veil is more pertinent and deserves more analysis.

Ohio law requires three factors to pierce the corporate veil: (1) that the owner had complete control over the corporation such that it has no distinguishable mind or existence; (2) that the owner used his control to commit a fraud, illegal act, or similarly unlawful act against the plaintiff; and (3) that loss or injury resulted. *Dombroski v. WellPoint, Inc.*, 895 N.E.2d 538, 545 (Ohio 2008) (refining the veil piercing standards expressed in *Belvedere Condo. Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 617 N.E.2d 1075, 1086 (Ohio 1993)). Oak Acres' evidence to pierce the corporate veil aligns closely with its evidence used to show successor liability, *supra*, but, as applied to the particular facts of this particular case, the *Belvedere* standard is significantly more rigorous than the *Welco* standard.

The third factor does not merit extensive analysis because the eventual loss after Oak Acres' invoices went unpaid is undisputed. Since a sole shareholder's complete control over a corporation is neither uncommon nor enough to meet the *Belvedere* standard (*e.g.*, *Univ. Circle Research Ctr. Corp. v. Galbreath Co.*, 667 N.E.2d 445, 448 (Ohio Ct. App. 1995)), the complete control factor blends with the second factor, which compels courts to look for instances where the complete control is exercised to commit fraud, an illegal act, or a similarly unlawful act.

13

*Dombroski*, 895 N.E.2d at 545. Ohio courts consider: "(a) grossly inadequate capitalization; (b) failure to observe corporate formalities; (c) insolvency of the debtor corporation at the time the debt was incurred; (d) the parent holding itself out as personally liable for certain subsidiary obligations; (e) diversion of funds or other property of the subsidiary for the parent's use; (f) the absence of corporate records; and (g) the fact that the subsidiary was a mere facade for the operations of the parent." *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007). Notwithstanding these factors, piercing the corporate veil is an equitable remedy, available only if respecting the corporate form would be unjust. *Dombroski*, 895 N.E.2d at 545.

Oak Acres presents some evidence relating to the third and fifth *Corrigan* factors (that is, insolvency and diverting funds for personal use). Seventeen invoices – dated between September 11, 2009 and April 20, 2010, and totaling $175,536 – are unpaid, which is the basis of this suit. Yet, Stinchcomb Nursery may have been insolvent prior to the first of those orders. Its 2009 closing balance sheet shows its assets were just $1,826,987 but liabilities were $4,831,788. (Fudo Expert Report, Doc. 49-10 at 5.) In 2009, Stinchcomb Nursery was taking an average of 282 days to pay invoices (*Id.*) and, on December 14, 2009, it sent a letter to certain creditors acknowledging its inability to pay but offering certain reassurances (Doc. 50-5.) Assets less than liabilities and inability to pay debts are two indicators of insolvency. Ohio Rev. Code § 1701.01 (Ohio's general corporation law, defining 'insolvent' as: "the corporation is unable to pay its obligations as they become due in the usual course of its affairs."); *see Aristocrat Lakewood Nursing Home v. Mayne*, 729 N.E.2d 768, 777 at n.11 (Ohio Ct. App. 1999) ("There are two basic definitions of insolvency. The balance sheet approach determines whether assets exceed liabilities, whereas the equitable test looks at cash flow and whether the debtor has an ability to pay debts as they become due.");

14

*see also* 11 U.S.C.A. § 101 (United States Bankruptcy Code) ("The term 'insolvent' means . . . financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation . . .."). Thus, for the entire time Stinchcomb Nursery was ordering the plants that led to the unpaid invoices, it may have been insolvent both because it had negative net worth and because it was indicating to other creditors that it might not be able to pay its bills.

The defendants argue that they were not under any duty to wind down operations the moment they started losing money. (Doc. 64 at 7-8.) This statement conflates losing money with insolvency; insolvency indicates an inability to pay debts and is distinct from simply losing money. Furthermore, entering insolvency can create certain obligations, duties, and liabilities even if the company does not wind down. *Star Hardware & Supply Co. v. Toledo Steel Castings Co.*, 106 N.E. 966, 966 (Ohio 1914) ("The directors of an insolvent corporation hold its property in trust for the benefit of all its creditors, and have no authority to transfer, sell, and assign all of the property of the insolvent corporation to its secured creditors in satisfaction of their claims and liens, regardless of the rights of unsecured creditors, but must proceed to wind up the affairs of such corporation and apply all of its property and assets to the payment of its debts in the order of their priority according to law."). While it is true that they were not required to wind down operations at the first indication of a loss, Oak Acres may be able to show that ordering extensive product after crossing into insolvency is an indication courts can use to justify piercing the corporate veil.

The fifth *Corrigan* factor is also relevant here. 478 F.3d at 724. Oak Acres can show that $2,061,175.30 of Stinchcomb Nursery's sales receipts were deposited in the Stinchcomb Associates account. (Related Party Payable/Receivables, Doc. 51-4; Rosengarten Dep., Doc. 58-4

at 187.) The record contains evidence of a considerable number of loans between Mr.

Stinchcomb's three entities (Stinchcomb Associates, Stinchcomb Nursery, and Stinchcomb

Realty). (Doc. 51-4 (detailing transfers between the three companies and Mr. Stinchcomb).)

Stinchcomb Nursery wound down its operations without fully resolving some open loans. (*Id.*;

Fudo Report, Doc. 49-10 at 7.) The companies sometimes paid each other's expenses with no

apparent reimbursement. (Doc. 51-4.) Stinchcomb Nursery also paid Stinchcomb Realty $342,000

for "Annual rent" in 2009, but, in all years before and after 2009, its only interaction with

Stinchcomb Realty was to pay Realty's bills (which remains a credit to Stinchcomb Nursery). (*Id.*)

Similarly, in 2008, Stinchcomb Nursery paid a one-time management fee to Stinchcomb

Associates to reimburse that company for time spent by its managers handling Stinchcomb

Nursery matters. ((Related Party Payable/Receivables, Doc. 51-4; Rosengarten Dep., Doc. 58-4 at

188.) This fee, however, occurs only in 2008. When Stinchcomb Nursery had finally wound-down

in 2010 and the payables and receivables of Mr. Stinchcomb, Stinchcomb Associates, and

Stinchcomb Realty are summed together, those three entities contributed $391,000 to Stinchcomb

Nursery. The defendants claim this shows that funds were not diverted for personal use, but, with

all the indications of the companies paying each other's bills, depositing each other's receipts,

loaning each other money, and paying single lump sum fees to each other while calling those

ongoing expenses (rent, management), Oak Acres has shown that it has some evidence that funds

were diverted for personal use. *See Corrigan*, 478 F.3d at 724. This allows Oak Acres to move

forward with its veil piercing claim and prevents Mr. Stinchcomb's dismissal.

16

C. PIERCING THE CORPORATE VEIL TO HOLD STINCHCOMB ASSOCIATES LIABLE

Oak Acres seeks to pierce the corporate veil of Stinchcomb Associates, which does not own Stinchcomb Nursery, but is instead a sister company. "A corporation's veil may not be pierced in order to hold a second corporation liable for the corporate misdeeds of the first when the two corporations have common individual shareholders but neither corporation has any ownership interest in the other corporation." *Minno v. Pro-Fab, Inc.*, 905 N.E.2d 613, 617 (Ohio 2009). Oak Acres relies on a district court case that allowed the piercing of a sister company where the owner and the sister company were alter egos of each other. *Fortress Value Recovery Fund I, LLC v. Columbus Components Group LLC*, No. 1:11-CV-00200, 2011 WL 1130442 at *4 (N.D. Ohio Mar. 28, 2011). That case drew its authority from a Court of Appeals case that found that sister companies can be liable as alter-egos of each other in employment cases arising under federal law, but that "there is no such thing as a 'veil piercing version of the alter ego doctrine.'" *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Aguirre*, 410 F.3d 297, 302 (6th Cir. 2005). This case does not arise under federal law, is not an employment case, and the Court can find no authority to support piercing the corporate veil of a sister company. The Court dismisses the claim to pierce the corporate veil of Stinchcomb Associates.

D. FRAUD

Oak Acres asserts that the defendants committed fraud by intentionally misrepresenting their ability to pay, their guarantee of payment, that payment would be forthcoming, and that Oak Acres would not be harmed in the transaction. (Am. Compl., Doc. 20 at ¶¶ 45-49.) "Fraud is (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard

17

and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998). Promises of future payment are not representations of fact for purposes of a fraud analysis, unless the maker of the promise knows as he makes it that he does not intend to keep it. *Martin v. Ohio State Univ. Found.*, 742 N.E.2d 1198, 1205 (Ohio Ct. App. 2000); *Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866, 874 (6th Cir. 2007). This presents a high bar of proof, going to the intent of the purchaser, not just his financial condition, as he made the order. Oak Acres has not pointed to evidence indicating that the defendants made their promises of future payment without the intent to pay. Short of showing this lack of intent, the promises are not representations made falsely; they are simply promises not kept.

Oak Acres also says that Mr. Stinchcomb had a duty to disclose the inability to pay at the time Stinchcomb Nursery became insolvent and that he concealed that fact. In insolvency, directors of a corporation are often said to acquire a fiduciary duty, owed to the creditors, to neither waste the assets of the company nor disperse the assets to the stockholders without first paying the debts. *Thomas v. Matthews*, 113 N.E. 669, 673 (Ohio 1916). Nevertheless, Oak Acres has provided the Court with no authority suggesting that insolvency creates an additional duty to disclose the fact of insolvency to the creditor. In fact, case law suggests that, even in insolvency, fraud is only committed where the purchaser conceals his lack of intent to pay for the purchased goods (or at least his complete lack of an ability to repay), not where he conceals the insolvency and possibility he will not be able to pay. *Talcott v. Henderson*, 31 Ohio St. 162, 165 (1877); *accord* 50 Ohio Jur. 3d Fraud and Deceit § 65 (citing *Talcott*) ("[A] purchase of goods by an

18

insolvent buyer who conceals his or her insolvency with intent to injure the seller is fraudulent and voidable, yet a purchase under like circumstances with the absence only of the intent is not, in law, fraudulent."). Stinchcomb Nursery was in the business of reselling plants, had past success in that, and had a customer (Kmart) lined up for the plants it was buying from Oak Acres. Other than showing Stinchcomb Nursery's insolvency and its lack of disclosure of that, Oak Acres has not pointed to any evidence suggesting that Stinchcomb Nursery bought the plants on credit without the intent to pay.

## E. CIVIL CONSPIRACY

Since Oak Acres has not pointed to evidence that would allow it to survive summary judgment on the fraud question, it cannot show civil conspiracy. "An underlying unlawful act is required before a civil conspiracy claim can succeed." *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998).

## F. NEGLIGENT MISREPRESENTATION

"One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Delman v. City of Cleveland Heights*, 534 N.E.2d 835, 838 (Ohio 1989) (emphasis omitted) (citing Restatement (Second) of Torts § 552). Negligent misrepresentation and fraudulent misrepresentation (discussed Section E, *supra*) differ in the mental states required: fraud requires intent or knowledge that the other will act on the false information where negligent misrepresentation requires only a lack of reasonable

19

care or competence in communicating the information. *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1269 (Ohio Ct. App. 1996). *Compare* Restatement (Second) of Torts § 531 (Fraudulent Misrepresentation General Rule) with *id.* at § 552 (Information Negligently Supplied for the Guidance of Others). However, Oak Acres has provided the Court with no authority suggesting that promises made but later not kept are, at the time of their making, "false information" for purposes of negligent misrepresentation where they are not for purposes of fraud. Generally, courts treat broken promises as breaches of contract, not misrepresentations. *E.g., Telxon Corp. v. Smart Media of Delaware, Inc.*, Nos. 22098 & 22099, 2005 WL 2292800 at *13 (Ohio Ct. App. Sept. 21, 2005) (finding that negligent misrepresentation, intentional misrepresentation, and fraud all require misrepresentation of a material fact, which precludes promises or representations of future actions or conduct, which are exclusively contractual matters). *But see Advantage Renovations, Inc. v. Maui Sands Resort, Co., L.L.C.*, No. E-11-040, 2012 WL 1493826 at *7 (Ohio Ct. App. April 27, 2012) (including "past or existing fact" in the elements of negligent misrepresentation, but nevertheless allowing the claim to survive summary judgment because the plaintiff may be able to show a promise made by a defendant). Because broken promises are the subject of numerous other areas of law, and because it can find no authority for doing so, the Court will not extend the tort of negligent misrepresentation to include broken promises, particularly not where the plaintiff has not shown the defendant did not have the intent to keep the promise at the time he made it. Further, in contrast with fraud, a claim for negligent misrepresentation cannot lie in an omission, only in the supplying of false information. *Textron*, 684 N.E. at 1269. Thus, in pointing to promises unfulfilled and omissions of the fact of

insolvency, Oak Acres has not shown the Court evidence that would prevent summary judgment on the negligent misrepresentation claim.

## G. UNJUST ENRICHMENT

Oak Acres asserts that Stinchcomb Associates was enriched unjustly because Kmart paid Stinchcomb Associates for the plants that Oak Acres supplied to Stinchcomb Nursery. In order to show unjust enrichment, Oak Acres needs to establish: (1) a benefit conferred by it upon Stinchcomb Associates; (2) Stinchcomb Associates' knowledge of the benefit; and (3) Stinchcomb Associates' retention of the benefit under circumstances where it would be unjust to do so without payment. *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984). Unjust enrichment is a theory of quasi-contract and works in the absence of a specific contract between the parties. *Hummel v. Hummel*, 14 N.E.2d 923, 927 (Ohio 1938).

Oak Acres can show that it shipped the plants to Stinchcomb Nursery and that many of those were sold to Kmart. (Stinchcomb Dep., Doc. 56-1 at 44-46.) Further, it can show that Kmart's only relationship was with Stinchcomb Associates and that when Kmart paid for the plants, it paid Stinchcomb Associates. (Related Party Payable/Receivables, Doc. 51-4; Rosengarten Dep., Doc. 58-4 at 187.) Thus, Stinchcomb Associates received the money paid by Kmart for the plants provided by Oak Acres. The record also demonstrates Stinchcomb Associates' knowledge of the receipt of the funds. (Doc. 58-4 at 187.) Finally, if Oak Acres cannot prove that Stinchcomb Associates is Stinchcomb Nursery's successor and thus cannot hold Stinchcomb Associates liable for breach of contract or action on account, Oak Acres may be able to demonstrate that it would be unjust to allow Stinchcomb Associates to keep the plant sales

21

money without compensating Oak Acres. Therefore, the claim for unjust enrichment against Stinchcomb Associates survives summary judgment.

Notwithstanding the unjust enrichment claim against Stinchcomb Associates, Oak Acres cannot maintain an action for unjust enrichment against Mr. Stinchcomb. It has not shown evidence that Mr. Stinchcomb retained the benefits of the plants himself (other than through his company, Stinchcomb Associates) and it has not introduced evidence that would support the piercing of Stinchcomb Associates' corporate veil to hold Mr. Stinchcomb liable if Stinchcomb Associates breached the quasi-contract by selling the plants to Kmart and retaining the money while Oak Acres went unpaid. Therefore, the unjust enrichment claim remains against Stinchcomb Associates but is dismissed against Mr. Stinchcomb.

## H. PROMISSORY ESTOPPEL

While the defendants' summary judgment motion acknowledges that the complaint includes a promissory estoppel claim and asks for judgment on all claims against Mr. Stinchcomb and Stinchcomb Associates, the motion does not provide law, facts, or analysis supporting judgment on this claim, so it remains.

## I. JUDGMENT AGAINST STINCHCOMB NURSERY

The defendants' summary judgment motion concedes contractual liability against Stinchcomb Nursery for the unpaid invoices and asks the Court, therefore, to dismiss all other claims against it since those are only alternative theories of liability. Double recovery would bar collecting on different theories of the same liability, but judgment on those claims is presently premature. Oak Acres may bring alternative claims and the Court cannot eliminate claims just

because they are inconsistent. *Teledyne Indus., Inc. v. N.L.R.B.*, 911 F.2d 1214, 1218 n.3 (6th Cir. 1990); Fed. R. Civ. P. 8(d).

VI. CONCLUSION AND REMAINING MATTERS

The Court denies Oak Acres' motion to strike references to irrelevant evidence about its own corporate practices. (Doc. 47.)

The Court denies Oak Acres' motion to strike testimony including hearsay or based on personal knowledge. (Doc. 48.)

The Court denies Oak Acres' motion to strike "Exhibit D" but will permit Oak Acres to request discovery related sanctions for failure to produce this document in the future and where appropriate. (Doc. 67.)

The Court grants in part and denies in part the defendants' partial summary judgment motion. (Doc. 42.) The Court denies the motion as to Count I of the complaint (for breach of contract), which remains against Stinchcomb Nursery, against Stinchcomb Associates if Oak Acres proves successor liability, and Mr. Stinchcomb if Oak Acres proves the elements necessary to pierce the corporate veil. The Court grants the motion as to Count II (for unjust enrichment) against Mr. Stinchcomb, but denies the motion as to Count II against the other defendants, so the count stands against Stinchcomb Nursery and Stinchcomb Associates. Count III (for promissory estoppel against all three defendants) remains because the defendants did not address it in the motion. The Court denies the motion as to Count IV (for action on account) which remains against Stinchcomb Nursery, against Stinchcomb Associates if Oak Acres proves successor liability, and against Mr. Stinchcomb if Oak Acres proves the elements necessary to pierce the corporate veil. The Court grants the motion as to Count V (for fraud) as to all three defendants. The Court grants

23

the motion as to Count VI (negligent misrepresentation) as to all three defendants. Counts VII and VIII are not claims but are theories for holding additional parties liable for claims in Counts I, III, and IV. *RCO Internatl. Corp. v. Clevenger*, 904 N.E.2d 941, 943 (Ohio Ct. App. 2008). The Court grants the motion as to Count IX (for civil conspiracy) as to all three defendants.

     IT IS SO ORDERED.

                         s/ *David A. Katz*
                        DAVID A. KATZ
                        U. S. DISTRICT JUDGE